|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 11 CR 0627 |
| | ) | |
| OSAMA S. SHALASH, | ) | Judge Joan H. Lefkow |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

The government's motions *in limine* [dkts. 134, 135, 137, and 138] are granted and the government's motions *in limine* [dkt. 150] are granted in part.[1]  The defendant's motion *in limine* [128] is denied.  See Statement Section.

## STATEMENT

### I.      Background

The government charged Osama Shalash with two counts of wire fraud in violation of 18 U.S.C. § 1343 and 2 for his alleged role in defrauding the United States Department of Agriculture in connection with LINK (commonly called food stamps) transactions on January 19, 2011 and January 27, 2011 at the Osama Food Mart, which Shalash operated.

### II.      Government's Motions *in Limine*

#### 1)      Motion to Preclude Shalash from Introducing Testimony about Gang Activity in Front of His Store, Police Calls for Service, or Other Attempts to Be Lawful [Granted]—Dkt. 138

During the initial trial, Shalash offered testimony that he had fewer gang members in front of his store, fewer police calls for service, and less criminal activity than other stores in the area.  The government moves to exclude this evidence as irrelevant.  Shalash argues that this evidence is admissible as it demonstrates the reasons why he decided to operate a wholesale store instead of a convenience store in a high crime area.

---

[1]  Ruling is reserved with respect to the government's motion to admit summary evidence under Rule 1006 as explained below.

Shalash asserts that he opened the Osama Food Mart in a high crime area and, as a result, chose to operate his business as a wholesaler. Shalash explains that he preferred to market to individuals who wanted to purchase items in larger quantities, as those yielded a greater financial gain than sales of individual items. This testimony is admissible as relevant background evidence. *See United States* v. *Boros*, 668 F.3d 901, 908 (7th Cir. 2012) ("[E]ven though evidence may not relate directly to the defendant's innocence or guilt, or even to a fact in dispute, evidence is relevant when it provides background information about the defendant or the offenses charged."); *see also* Fed. R. Evid. 401 advisory committee's note ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.").

Shalash's additional testimony, however, that his decision to operate a wholesale store led to fewer gang members loitering outside of his store, fewer police calls, and less criminal activity than other stores in the area is not relevant. Whether there was a lack of criminal activity in and around the Osama Food Mart on other occasions has no tendency to prove or disprove whether Shalash is guilty of the crimes charged in the indictment. *See* Fed. R. Evid. 401. Accordingly, the government's motion to bar evidence about gang activity, police calls, or other criminal activity in and around his store is granted.

### 2)    Motion to Preclude Shalash from Introducing Testimony or Other Evidence Suggesting Government Destruction of Evidence [Granted]—Dkt. 137

The government seeks to exclude Shalash from offering evidence that the government destroyed evidence, including information recorded on Shalash's security system. At the first trial, Shalash's cousin testified that he installed the security system at the Osama Food Mart with video recording capabilities and introduced the instruction book on the security system. Federal agents executed a search warrant at the Osama Food Mart and seized the security system's hard drive and returned it approximately 14 days later. Shalash's cousin testified that he could not locate the video on the hard drive after it was returned. The agents testified that they never opened the hard drive and returned the security system before they could have an expert examine it.

The government notes that, assuming that an outrageous government conduct defense exists, it is for the court to decide and should not be presented to the jury. *See United States* v. *Bontkowski*, 865 F.2d 129, 131(7th Cir. 1989) ("[I]t is for the trial court, not the jury, to decide whether government conduct is so outrageous that due process bars the use of the judicial system to obtain a conviction."); *cf. United States* v. *Rainone*, 32 F.3d 1203, 1208 (7th Cir. 1994) ("A defendant is not entitled to have the jury consider a defense for which there is no probative evidence."). The government is correct; if the defense seeks to argue outrageous government conduct premised on destruction of evidence, it must present those allegations to the court outside the presence of the jury.

The government further argues that Shalash does not have a viable defense based on the

government's seizing of the security system because there is no evidence that the security video contained exculpatory evidence. Indeed, the defense has never argued before the court that the alleged government destruction of evidence resulted in a due process violation. To succeed on such a defense, Shalash would need to show that the government failed to preserve evidence that might have exonerated him. *See United States* v. *Fletcher*, 634 F.3d 395, 407 (7th Cir. 2011) (citing *Arizona* v. *Youngblood*, 488 U.S. 51, 57, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)). To make this showing, Shalash must establish (1) bad faith by the government; (2) that the exculpatory nature of the evidence was apparent before its destruction; and (3) that he could not obtain the same evidence anywhere else. *See United States* v. *Kimoto*, 588 F.3d 464, 475 (7th Cir. 2004).

Shalash has not provided any evidence substantiating the first two elements. At the outset, Shalash has not provided evidence that the agents actually destroyed the video on the security system. He asserts that the security system contained video recordings before the government seized the property but the video was absent after the government returned it. Even if it is assumed that the video existed before the government seized the security system, Shalash has no evidence that the agents destroyed the video in bad faith. Namely, the agents testified that they never opened the hard drive on the security system because they did not know how. This testimony belies an argument that the agents acted in bad faith. Nor does Shalash sufficiently articulate the nature of the exculpatory evidence on the alleged video recordings. Shalash assumes that the video on the hard drive would have shown Mustafa Zaid walking out of the Osama Food Mart with the goods purchased from the CI unbeknownst to Shalash. The undercover videos, however, as the government notes, reflect quite the opposite. Shalash also argues that the video is indicative of the CI's credibility as it would have shown her negotiating side deals with Zaid; however, the CI's credibility is not at issue as she is not testifying at trial. Accordingly, because Shalash failed to substantiate that the government destroyed exculpatory evidence in bad faith, this argument is irrelevant and he is precluded from arguing this issue.

Shalash also notes that agents seized a 32-inch flat screen television from the Osama Food Mart when they confiscated the security system. Shalash argues that the search warrant did not authorize seizure of the television and additionally notes that the government has failed to return it. It is not clear what relief Shalash is requesting. If he intends to argue that the government's seizure of the television was improper and prevented him from obtaining exculpatory evidence, he is precluded from doing so for the reasons already stated. To the extent Shalash seeks return of the television set, he has other appropriate avenues of relief. *See* Fed. R. Crim P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."). In any event, Shalash is precluded from raising the fact that the government confiscated his television when seizing the security system at the upcoming trial, as it is irrelevant.

### 3) Motion Regarding Admissibility of the Tape Recordings [Granted]—Dkt. 135

The government seeks to admit recordings of three transactions between the CI and

Shalash and Zaid at the Osama Food Mart. The government does not intend to call the CI or Zaid as witnesses to present the recordings but rather intends to introduce the recordings through the testimony of one or more supervising agents.

The government argues that the recordings are admissible without calling the CI as a witness. The CI's statement on those recordings are not being offered for the truth of the matter asserted but rather to provide context for Shalash's statements. Thus, there are no hearsay or confrontation clause issues raised by admitting the recordings without the CI's testimony. *See United States* v. *Van Sach*, 458 F.3d 694, 701–02 (7th Cir. 2006); *United States* v. *Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006). The recordings are admissible without the CI's testimony so long as the government provides a limiting instruction indicating that the statements are offered to provide context instead of for their truth. *See United States* v. *Wright*, --- F.3d ----, 2013 WL 3600345, at *3–4 (7th Cir. July 16, 2013)**.**

The government also argues that Zaid's statements on the recordings are admissible without Zaid's testifying as a witness. The government argues that Zaid's statements are not hearsay as they are coconspirator statements made during the course and in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E). As such, argues the government, there is no confrontation clause issue and the recordings are admissible without Zaid's testimony. The government is correct on both points. *See United States* v. *Hargrove*, 508 F.3d 445, 448–49 (7th Cir. 2007). To invoke this exception, the government must prove by a preponderance of the evidence that Shalash and Zaid were in a conspiracy and that Zaid's statements on the undercover recordings were made during and in furtherance of the conspiracy. *See* Fed. R. Evid. 104; *United States* v. *Prieto*, 549 F.3d 513, 524 (7th Cir. 2008). Zaid's statements from the first trial, which the court earlier determined satisfied the threshold for admissibility under the coconspirator exception are admissible in the upcoming trial. To the extent that the government intends to use additional statements that the court has not already ruled on, they should be prepared to identify which of Zaid's statements it seeks to admit and how these statements fall within the parameters of the coconspirator exception so that the court may determine whether the government can lay the appropriate foundation for admitting these statements in the upcoming trial. *See United States* v. *Bolivar*, 532 F.3d 599, 605 (7th Cir. 2008).

### 4) **Motion Regarding the Confidential Informant [Granted]—Dkt. 135**

The government seeks to preclude reference to the nontestifying CI's background by way of cross-examination of other witnesses or any other means. The government notes that the CI has a history of drug use and has several criminal convictions. Shalash has also referenced (albeit in separate briefings) that the CI stole from the government in connection with the investigation leading to the pending charges. But because the CI is not testifying, argues the government, the truthfulness of the CI is not at issue and her background is irrelevant. The court agrees. The CI will not be a witness at the trial and, as noted above, her out-of-court statements on the undercover recordings are not being offered for the truth of matter asserted but rather to provide context for Shalash's statements on those recordings. *See* Fed. R. Evid. 806; *United States* v. *Silva*, 71 F.3d 667, 670 (7th Cir. 1995); *United States* v. *McClain*, 934 F.2d 822, 833

(7th Cir. 1991); *see also United States* v. *McGowan*, 58 F.3d 8, 15–16 (2d Cir. 1995); *United States* v. *McNair*, 46 F. App'x 658, 659 (2d Cir. 2002) ("Under Fed. R. Evid. 806, the credibility of the declarant may be attacked only when a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted into evidence. No such statement by the [informant] was admitted into evidence."). *But see United States* v. *Burton*, 937 F.2d 324, 327–28 (7th Cir. 1991) ("In the absence of any limiting instruction directing the jurors to use [the informant's] statements only to put [defendants'] statements in context, [the informant's] statements must be taken as hearsay testimony admitted against defendants which they had a right to impeach.").

The government also seeks to preclude the defense from calling the CI for the sole purpose of impeaching her or presenting inadmissible evidence. As this technique is improper, the government's request is granted. *United States* v. *Giles*, 246 F.3d 966, 974 (7th Cir. 2001) ("[A] party may not call a witness for the sole purpose of impeaching him."); *United States* v. *Kane*, 944 F.2d 1406, 1411 (7th Cir. 1991) ("Impeachment of one's own witness cannot be permitted where employed as a mere subterfuge to present to the jury evidence not otherwise admissible.").

The government further requests that, if the defense intends to call the CI, the defense must provide a proffer beforehand demonstrating that a proper purpose for calling her exists. *See United States* v. *Finley*, 708 F. Supp. 906, 910 (N.D. Ill. 1989). If the defense plans on calling the CI, it will be required to provide a proffer detailing the testimony it expects to present at trial. The government further requests that if the court finds the proffer acceptable, it conduct a preliminary *voir dire* and limit the testimony to that which might contradict her prior statements. At this time, the court reserves ruling on these requests and will address them should the need arise.

### 5) Motion to Admonish Defense Counsel to Abide by this Court's Pretrial Rulings [<u>Granted</u>]—Dkt. 134

The government requests that the court admonish defense counsel to abide by the pretrial rulings and refrain from making improper arguments in front of the jury that violate pretrial rulings. During the first trial, defense counsel mentioned in his opening statement that the confidential informant had been fired by the USDA, thereby violating a pretrial ruling by the court. Defense counsel is admonished to abide by all pretrial rulings and to refrain from making improper arguments in front of the jury.

### 6) Inadmissibility of Penalties Faced by the Defendant [<u>Granted</u>]—Dkt. 134

This motion is granted. *See United States* v. *Lewis*, 110 F.3d 417, 422 (7th Cir. 1997) ("[T]he practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored.").

### 7) Inadmissibility of Forms of Argument or Evidence Designed to Elicit Jury Nullification [<u>Granted</u>]—Dkt. 134

The government moves to exclude any evidence tending to result in jury nullification. Argument tending to invite jury nullification is improper and will be excluded. *See United States* v. *Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006) (internal citation omitted) ("A defense should not be submitted to the jury, even in a criminal case, if there is no credible evidence to support it. Submission in such circumstances is just an invitation to jury nullification, a practice that is improper, though the remedies against it are limited."). The government identifies three specific arguments it contends amount to jury nullification warranting exclusion: (1) argument or evidence regarding outrageous government conduct; (2) argument or questioning about the motivation for investigating or prosecuting this case; and (3) referencing Shalash's family needs.

First, the government's request to exclude argument or evidence regarding outrageous government conduct is granted. *See, e.g.*, *United States* v. *White*, 519 F.3d 342, 346 (7th Cir. 2008) ("[T]his circuit clearly and consistently has refused to recognize any defense based on . . . outrageous government conduct") (internal quotation marks omitted).[2]

Second, the government's request to exclude argument or questioning about the motivation for investigating or prosecuting this case is also granted. *See United States* v. *Goulding*, 26 F.3d 656, 667 (7th Cir. 1994).

Last, the government seeks to preclude evidence and argument regarding Shalash's family needs to the extent such evidence is designed either to imply a motive or excuse for his criminal conduct or to invoke sympathy regarding the financial or emotional effect a conviction will have on Shalash' family. Evidence admitted for this purpose is improper and the government's motion is thus granted. *See United States* v. *Henderson*, No. 11 CR 74, 2012 WL 698796, at *2 (N.D. Ill. Mar. 2, 2012) ("Argument or evidence relating a defendant's family needs is not admissible to infer a motive or an excuse for [a] defendant's criminal conduct or to invoke sympathies regarding the impact of a conviction upon a defendant's family."); *United States* v. *Shields*, No. 90 CR 1044, 1991 WL 236492, at *4 (N.D. Ill. Aug. 13, 1991) ("The defendants may present testimony establishing that they have families. However, the Court will not allow such testimony to be presented in detail, nor will the Court permit any testimony regarding the possible impact which a conviction might have upon any family member."). This ruling does not preclude Shalash from introducing general evidence regarding his background, which may include testimony that he has a family.

**8)       Motion to Admit Summaries of Evidence [Reserved]—Dkt. 134**

The government indicates that it may seek to introduce summaries under Rule 1006 of Shalash's financial activity gathered from voluminous business records from banks, businesses, and the USDA. Rule 1006 permits the introduction of voluminous evidence that cannot be conveniently in court in the form of a summary. *See* Fed. R. Evid. 1006. The underlying

---

[2] Shalash's argument regarding the government's alleged destruction of evidence is separately addressed *supra* at II.2.

material substantiating the summarized information must independently be admissible, *see United States* v. *Oros*, 578 F.3d 703, 708 (7th Cir. 2009), and the government notes here that the underlying information would be admissible as business records obviating any hearsay issues. *See* Fed. R. Evid. 803(6). Rule 1006 additionally requires that the underlying material be provided to the opposing party at a reasonable time and place to ensure adequate time for the opposing party to check the accuracy of the summary. *See United States* v. *Isaacs*, 593 F.3d 517, 527 (7th Cir. 2010). The government may introduce summary evidence if it complies with the strictures of Rule 1006. At this time, ruling on the admissibility of this type of evidence is premature and ruling is thus reserved.

### 9) Impropriety of Discovery Requests or Commentary Regarding Discovery in the Presence of the Jury [Granted]—Dkt. 134

This motion is granted. Any objection by the defense regarding missing discovery will be handled outside the presence of the jury.

### 10) Inadmissibility of Evidence and Argument of Lawfulness and Non-Corrupt Conduct [Granted]—Dkt. 134

The government seeks to preclude Shalash from offering evidence regarding non-pertinent character traits under Rules 404 and 405.[3] This motion is granted. Shalash has not presented any evidence that lawfulness and non-corrupt conduct is a pertinent character trait for the crimes with which he has been charged. *See* Fed. R. Evid. 404(a), (b), 405(b); *United States* v. *Hill*, 40 F.3d 164, 168 (7th Cir. 1994); *United States* v. *Beverly*, 913 F.2d 337, 353 n.23 (7th Cir. 1990); *United States* v. *Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990); *United States* v. *Winograd*, 656 F.2d 279, 284 (7th Cir. 1981).

### 11) Impropriety of Making a "Golden Rule" Argument to the Jury [Granted]—Dkt. 134

This motion is granted. The "Golden Rule" argument precludes asking the jury to place themselves in the defendant's shoes. *See United States* v. *Roman*, 492 F.3d 803, 806 (7th Cir. 2007) (this argument "'is universally recognized as improper because it encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" (quoting *United States* v. *Teslim*, 869 F.2d 316, 328 (7th Cir. 1989)).

### 12) Motion to Preclude Shalash from Calling Any Witness Simply to Impeach the Witness or as Subterfuge to Present Otherwise Inadmissible Impeachment Evidence [Granted]—Dkt. 134

---

[3] This motion dovetails with the government's request excluding the absence of illegal conduct in and around the Osama Food Mart. *See supra* at II.1. As noted above, this evidence is excluded as irrelevant.

This motion is granted. The defense may not a call a witness for the sole purpose of impeaching the witness, nor may the defense call a witness to elicit information otherwise ruled inadmissible. *See Giles*, 246 F.3d at 974; *Kane*, 944 F.2d at 1411; *see also Silva*, 71 F.3d at 670–71.

### 13)     Motion to Preclude Any Reference to Zaid's Testimony Unless and Until Zaid Testifies [<u>Granted in Part</u>]—Dkt. 150

On March 7, 2013, a jury convicted Shalash and Zaid on two counts of wire fraud in violation of 18 U.S.C. § 1343 and 2. Shalash and Zaid initially filed motions for a mistrial; however, on April 24, 2013, Zaid decided to proceed to sentencing. *See* Dkt. 118. On April 26, 2013, the court granted Shalash's motion for a mistrial as unopposed. Zaid is scheduled to be sentenced on September 12, 2013, and Shalash's second trial begins on September 16, 2013.

In the first trial, Zaid testified that, in 2011, unbeknownst to Shalash, he purchased goods with cash from customers in the Osama Food Mart who had purchased the same goods with their Link cards. Shalash subpoenaed Zaid to testify at the upcoming trial. In response, Zaid's counsel informed the government that he would invoke his Fifth Amendment privilege against self-incrimination and refuse to testify.

Shalash argues that Zaid waived the privilege by testifying during the initial trial and that, in any event, Zaid will have lost the privilege by the time of the retrial because he will have already been sentenced. The government contends that the privilege is not defeated by Zaid's prior testimony or the anticipated imposition of sentence and that Shalash should be precluded from using Zaid's prior testimony if he invokes the Fifth Amendment.

That Zaid testified in the first trial and may have already been sentenced by the time of the second trial does not preclude him from invoking his Fifth Amendment right to remain silent in Shalash's trial. Additionally, Zaid's invoking the Fifth Amendment at the second trial does not preclude Shalash from using Zaid's prior testimony at the upcoming trial.

#### *Fifth Amendment Privilege*

When a witness asserts his Fifth Amendment privilege against self-incrimination, the court must determine whether a witness has a legitimate concern that providing an answer will incriminate the witness. *United States* v. *Kuh*, 541 F.2d 672, 674 (7th Cir. 1976) ("It is well settled that the Fifth Amendment privilege against self-incrimination must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer.") (internal quotation marks omitted). "To be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have *some* tendency to subject the person being asked the question to criminal liability." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663–64 (7th Cir. 2011). "Some nexus between the risk of criminal conviction and the information requested must exist." *Martin-Trigona* v. *Gouletas*, 634 F.2d 354, 360 (7th Cir. 1980).

*Waiver*

Shalash argues that Zaid waived his Fifth Amendment right by testifying at the first trial. A witness can waive their Fifth Amendment right when testifying voluntarily about a subject and later invoking the privilege on the same subject. *See Mitchell* v. *United States*, 526 U.S. 314, 321–22, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999).[4] This waiver, however, must occur in a single proceeding (*i.e.*, the same trial). *See Mitchell*, 526 U.S. at 321 ("It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details."); *United States* v. *Longstreet*, 567 F.3d 911, 923 (7th Cir. 2009) (co-defendant did not waive his right to invoke the Fifth Amendment by previously entering into a proffer agreement with the government); *see also United States* v. *Rivas-Macias*, 537 F.3d 1271, 1280 (10th Cir. 2008) ("A witness' testimonial waiver of the  privilege is only effective, however, if it occurs in the *same proceeding* in which a party desires to compel the witness to testify."); *Schneider* v. *Love*, No. 09 C 3105, 2011 WL 635582, at *2 (N.D. Ill. Feb. 10, 2011) ("Defendant also contends it was improper to invoke the Fifth Amendment because plaintiff had already testified at the first trial.  That, however, does not constitute a waiver precluding plaintiff from declining to testify at a further trial or invoking the Fifth Amendment prior to any retrial.").  Accordingly, Zaid's decision to testify in the first trial does not preclude him from invoking his Fifth Amendment right.  Further, Zaid's decision is timely as he raised the fact that was invoking the Fifth Amendment before the upcoming trial.

### Further Criminal Liability

Shalash argues that Zaid will have lost his Fifth Amendment privilege because his sentencing is set before the upcoming trial begins. "It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege." *Mitchell*, 526 U.S. at 326 ("[This] principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final.  If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared."); *compare United States* v. *Bahadar*, 954 F.2d 821, 824 (2d Cir. 1992) ("[S]ince [the co-defendant] had not been sentenced on the count to which he pled guilty (and was faced with two open counts, later dismissed by the government), any testimony which he gave at [his co-defendant's] trial could have been used as the basis for an upward departure at sentencing, or as evidence to support a prosecution on the two open counts.").

Still, if a truthful answer at the second trial is different from the testimony given at the first trial, Zaid could be prosecuted for perjury committed during the first trial. *See*, *e.g.*, 18 U.S.C. §§ 1512(c)(2); 1621(1); *see also Duran* v. *Town of Cicero*, 653 F.3d 632, 647 n.5 (7th

---

[4]  A witness may also waive his or her Fifth Amendment rights (1) when failing to invoke the privilege, *see United States* v. *Murphy*, 768 F.2d 1518, 1532; and (2) when the government grants the witness immunity, *see Smith* v. *United States*, 337 U.S. 137, 149–50, 69 S. Ct. 1000, 93 L. Ed. 1264 (1949).  Neither exception is applicable here.

Cir. 2011) (witness who was incarcerated at the time of his trial testimony for a civil rights violation premised on excessive force could invoke the Fifth Amendment for a question that asked him to affirm preparing false police reports as that answer could have subjected him to an obstruction of justice charge); *United States* v. *Housand*, 550 F.2d 818, 823 (2d Cir. 1977) ("The Fifth Amendment privilege question arises when the witness refuses to answer on the ground that his *second* version of the event may result in his prosecution for perjury. . . . [T]he giving of truthful testimony on the second occasion could surely trigger investigation of whether the original testimony was false. . . . This is reasonable cause for apprehension and supports the claim of privilege.").

### Zaid's Prior Testimony if He Invokes His Fifth Amendment Privilege

The government additionally argues that Zaid's testimony from the prior trial is inadmissible if Zaid invokes his Fifth Amendment right at the upcoming trial. The government, however, does not address Rule 804(b)(1), which excludes from the hearsay rule prior testimony of a witness deemed to be unavailable. *See* Fed. R. Evid. 804(b)(1). A witness who invokes his Fifth Amendment right is deemed unavailable under Rule 804. *See United States* v. *Moore*, 936 F.2d 1508, 1516 (7th Cir. 1991).

Second, if a witness is unavailable, prior testimony of the witness is not excluded by the hearsay rule if the testimony was given at a trial and is offered against a party who had an opportunity and motive to develop the testimony on cross-examination. *See* Fed. R. Evid. 804(b)(1). Here, Zaid testified at the first trial, and because he was a defendant in that trial, the government had the opportunity and motive to cross-examine him. Zaid's prior testimony thus falls within the ambit of Rule 804(b)(1). *See United States* v. *Pizarro*, 717 F.3d 336, 349–51 (7th Cir. 1983) (reversible error to exclude the testimony of a co-defendant who testified during the initial trial but subsequently invoked the Fifth Amendment in the defendant's retrial); *see also United States* v. *McFall*, 558 F.3d 951, 961–64 (9th Cir. 2009) (reversing defendant's conviction as district court erred in excluding exculpatory grand jury testimony of a witness who subsequently invoked the Fifth Amendment).

III. **Shalash's Motion** *in Limine* **[Denied]—Dkt. 128**

Shalash moves to exclude statements of the CI in the undercover recording. The court has already ruled that such statements are admissible for their context and are not hearsay. The court will provide a limiting instruction indicating that the statements are not offered for their truth but rather as context. Accordingly, this motion is denied.

Date: September 10, 2013

_____
U.S. District Judge Joan H. Lefkow

10